**Roger K. Harris,** OSB #78046
E-mail: roger@HBClawyers.com
**Shawn M. Lindsay,** OSB #02069
E-mail: shawn@HBClawyers.com
**HARRIS BERNE CHRISTENSEN LLP**
5000 SW Meadows Road, Suite 400
Lake Oswego, OR 97035-2224
Telephone:  (503) 968-1475
Fax: (503) 968-2003
        of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| GAIL M. COPE,<br><br>                    Plaintiff,<br><br>    v.<br><br>MBNA AMERICA BANK, NA, a national banking association,<br><br>                    Defendants. | Case No. 04-CV-493-JE<br><br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES** |

# TABLE OF CONTENTS

LR 7.1 Statement ...................................................................................................1

Introduction ......................................................................................................... 1-2

Statement of Issues for Summary Adjudication ...................................................2

Plaintiff's Statement of Undisputed Facts ........................................................ 2-8

    I.      Rachel's credit cards with MBNA............................................ 2-4
    II.     The MBNA Credit Card Agreement......................................... 4-5
    III.    MBNA's reporting on Gail Cope's credit files....................... 5-6
    IV.    Gail Cope's formal dispute .................................................... 6-8

Standard of Review.......................................................................................... 8-10

Points and Authorities.................................................................................. 10-30

    I.      MBNA is Not Entitled to the Qualified Immunity of
          15 U.S.C. § 1681h(e) with respect to Gail Cope's
          defamation claim............................................................... 10-11

    II.     MBNA defamed Gail Cope by falsely reporting
          Rachel's MasterCard Account on Gail Cope's
          credit files...................................................................... 11-20

          A. Elements of Defamation Claim.................................... 11-12

          B. According to MBNA's own terms its Credit Card
             Agreement, Gail Cope is not responsible for, or
             Liable on, Rachel's MBNA MasterCard Account
             And, for that reason, MBNA's reporting was false ...................... 12-17

          C. MBNA's false reporting was willful or with malice ................... 17-20

    III.    MBNA violated the FCRA by falsely reporting Rachel's
          MBNA MasterCard Account on Gail Cope's credit files
          and by failing to conduct a "reasonable investigation" ...................... 20-30

          A. The FCRA imposes strict duties on furnishers of
             Information ............................................................... 20-21

          B. MBNA violated §1681s-2(1)(A) of the FCRA by
             Failing to conduct a "reasonable investigation" ...................... 21-30

i

1. Reasonable investigation standard...............................................22-23

2. Issue Preclusion/Collateral Estoppel..........................................23-26

3. Even if MBNA is not precluded/collaterally estopped,
   the court can find as a matter of law on undisputed
   material facts that MBNA's investigation procedures
   are unreasonable .........................................................................26-29

4. MBNA's failure to conduct a reasonable investigation
   meets both the "negligent" and "intentional" state of
   mind standard ............................................................................29-30

Conclusion    ................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Agosta v. Inovision, Inc.,*
2003 WL 22999213, at *5 (E.D.Pa. Dec. 16, 2003) .........................................................22

*Ayers v. Equifax Inf. Serv.,*
2003 WL 23142201 (E.D. Va. Dec. 16, 2003) ...............................................................21

*Bennett v. Met. Life Ins. Co.,*
173 Or. 386, 411 (1944).................................................................................................14,15

*Betts v. Equifax Credit Info. Servs.,*
245 F. Supp. 2d 1130 (W.D. Wash. 2003).....................................................................21,22

*Bose Corp. v. Consumers Union of U.S., Inc.,*
466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)...............................................18

*Booras v. Uyeda,*
295 Or. 181, 193 (1983)..................................................................................................14

*Bruce v. First U.S.A. Bank,*
103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000)................................................................22

*Bryant v. TRW, Inc.*
689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970) .......................20

*Buxton v. Equifax Info. Servs.,*
2003 WL 228442245 (N.D. Ill. Dec. 1, 2003) ...............................................................21,22

*Celotex Corp. v. Catrett,*
477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)............................................9

*Cisneros v. Trans Union,*
293 F. Supp. 2d 1167, 1177 (D. Haw. 2003) ..................................................................17

*Danielson v. Experian Info. Solutions Inc.,*
2004 WL 1729871 (D. Minn. July 30, 2004) ..................................................................21

*Eagle Indus., Inc. v. Thompson,*
321 Or. 398, 405-406 (1995) ..........................................................................................14

*Evantash v. G.E. Capital Mortgage Serv., Inc.,*
2003 WL 22844198 (E.D. Pa. Nov. 25, 2003) .................................................21

*Griffith v. Utah Power & Light Co.,*
226 F.2d 661, 670 (9th Cir. 1955) .................................................................10

*Harte-Hanks Communications v. Connaughton,*
491 U.S. 657, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989)................................18

*Hoffman Constr. Co. v. Fred S. James & Co.,*
313 Or. 464, 469-470 (1992) .................................................................14,15,16

*Hugie v. City of Shady Cove,*
85 Or. App. 229, 233, *rev. denied*, 303 Or. 699 (1987)....................................17

*Johnson v. MBNA Am. Bank, NA,*
357 F.3d 426 (4th Cir. 2004) ......................................21,22,23,24,25,26,28,29

*Kronstedt v. Equifax,*
2001 WL 34124783, at *16 (W.D. Wis. Dec. 14, 2001) ................................22

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)..................9

*Matthews v. Government Emples. Co.,*
23 F. Supp. 2d 1160, 1164 (S.D. Cal. 1998)...................................................17

*McNabb v. Oregonian Publ'g Co.,*
69 Or. App. 136, 140 (1984)............................................................................17

*Montana v. United States,*
440 U.S. 147, 153, 162 (1979)........................................................................23

*Morrow v. II Morrow, Inc.,*
139 Or. App. 212, 218, 911 P.2d 964, *rev. denied*, 323 Or. 153 (1996)............11

*Nelson v. Chase Manhattan Mortgage Corp.,*
282 F.3d 1057, 1059 (9th Cir. 2002) ..............................................................21

*New York Times v. Sullivan,*
376 U.S. 254, 279 (1964)............................................................................17,19

*OSEA v. Rainier School Dist. No. 13,*
311 Or. 188, 194 (1991)..................................................................................14

*Olwell v. Med. Info. Bureau,*
2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003)..................................................................22

*Petersen v. Cazemier,*
164 F. Supp. 2d 1217, 1221-1222 (D. Or. 2001) ..............................................................9

*Portland Web Pressmen's Union Local No. 17 v. Oregonian Publ'g Co.,*
188 F. Supp. 859, 865 (D. Or.), *aff'd.,* 286 F.2d 4,
*cert. denied,* 366 U.S. 912, 6 L.Ed.2d 237, 81 S.Ct. 1086 (1961) ..............................15,16

*Reesman v. Highfill,*
327 Or. 597, 603, 965 P.2d 1030 (1998) ..........................................................................12

*Resolution Trust Corp. v. Keating,*
186 F.3d 1110 (9th Cir. 1999) ..........................................................................................23

*Satern v. Montgomery Ward & Co.,*
362 S.E.2d 324 (Va. 1987)................................................................................................17

*Secor Investments, LLC v. Anderegg,*
188 Or. App. 154, 71 P.3d 538 (2003)..............................................................................23

*St. Amant v. Thompson*
390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968)............................................17

*Thornton v. Equifax, Inc.,*
619 F.2d 700 (8th Cir. 1980) ............................................................................................17

*Traders & Gen. Ins. Co. v. Freeman,*
81 F. Supp. 2d 1070, 1073 (D. Or. 2000) ........................................................................14

*Trundle v. Homeside Lending, Inc.,*
162 F. Supp. 2d 396 (D. Md. 2001) ..................................................................................12

*U.S. v. Performance Capital Management* at penultimate paragraph
(Bankr. C.D. Cal. Aug. 24, 2000) ......................................................................................22

*United States v. Stauffer Chemical Co.,*
464 U.S. 165, 171 (1984)..................................................................................................23

*Verret v. DeHarpport,*
49 Or. App. 801, 621 P.2d 598 (1980)..............................................................................23

*Wade v. Equifax,*
2003 WL 22089694, at *2-*3 (N.D. Ill. Sept. 8, 2003)....................................................22

*Washington County Police Officers v. Washington County*,
321 Or. 430, 435 (1995)................................................................23

*Yogman v. Parrott*,
325 Or. 358, 361, 364 (1997)........................................................14,16

*Zotta v. Nationscredit Fin. Servs.*,
297 F. Supp. 2d 1196 (E.D. Mo. 2003).........................................21


## **Codes**

15 U.S.C. §1681 *et seq*...............................................................2,

15 U.S.C. §1681a(k)(1)...............................................................11

15 U.S.C. § 1681h(e) ..............................................................2,10,30

15 U.S.C. §1681i.......................................................................21

15 U.S.C. §1681i(a)(1)...............................................................7

15 U.S.C. §1681i(a)(2)...............................................................21

15 U.S.C. §1681n and o ...............................................................21

15 U.S.C. §1681s-2(a)(1)(A) ........................................................20

15 U.S.C. §1681s-2(b) ................................................................21

15 U.S.C. §1681s-2(b)(1).............................................................22,25,29

15 U.S.C. §1691(d)(6) ................................................................11


## **Federal Rules**

FRCP 56    ..............................................................................9

Fed. R. Civ. P. 56(c) ................................................................9

FRCP 56(d)    ..........................................................................9,10

Fed. R. Civ. P. 56(e) ................................................................9

## **Statutes**

Or. Rev. Stat. 42.230..........................................................................................14

Or. Rev. Stat. 42.240.....................................................................................14,15

## **Other**

Fair Credit Reporting Act ................................2,7,10,11,17,18,19,20,21,22,23,25,26,29,30

National Consumer Law Center, Fair Credit Reporting, §3.4.3 (5th Ed. 2002)...............21

RESTATEMENT (SECOND) OF TORTS §568, comment d (1977)...........................................11

**Roger K. Harris,** OSB #78046
E-mail: roger@hbclawyers.com
**Shawn M. Lindsay,** OSB #02069
E-mail: shawn@hbclawyers.com
**HARRIS BERNE CHRISTENSEN LLP**
5000 SW Meadows Road, Suite 400
Lake Oswego, OR 97035-2224
Telephone:  (503) 968-1475
Fax: (503) 968-2003
        of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| GAIL M. COPE,<br><br>                    Plaintiff,<br><br>        v.<br><br>MBNA AMERICA BANK, NA, a national banking association,<br><br>                    Defendant. | Case No. 04-CV-493-BR<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**<br><br>**REQUEST FOR ORAL ARGUMENT** |

## LR 7.1 STATEMENT

As represented in the Joint ADR Report, the parties made a good faith effort through personal or telephone conferences to resolve the dispute, and have been unable to do so.

## INTRODUCTION

Rachel Cope ("Rachel"), daughter of plaintiff Gail M. Cope ("Gail Cope"), obtained a MasterCard credit card from defendant MBNA America Bank, NA ("MBNA").  When Rachel failed to pay her MBNA bill and later filed bankruptcy, MBNA inappropriately reported the defaults on the credit report of her mother, Gail Cope.  When Gail Cope disputed the reporting,

Page 1 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

MBNA asserted that its reporting was accurate because Gail Cope was listed in MBNA's records as a co-applicant on a separate Visa credit card account that MBNA had previously granted to Rachel.  The consequence of MBNA's initial folly has been compounded to the point of defamation and substantial violations of the Fair Credit Reporting Act.

## STATEMENT OF ISSUES FOR SUMMARY ADJUDICATION

Gail Cope filed suit against MBNA on the following three claims for relief: 1-Common law defamation; 2-Negligent violation of the Fair Credit Reporting Act ("FCRA"),[1] and 3-Willful violation of the FCRA.  Gail Cope brings this motion for summary adjudication of facts and issues on the following grounds:

1.    Regarding the common law defamation claim, MBNA is not entitled to qualified immunity under 15 U.S.C. § 1681h(e) because the user took no "adverse action" based on false and derogatory information furnished by MBNA to Gail Cope's credit file.

2.    The disputed MBNA MasterCard credit card account is not, and never has been, Gail Cope's credit card account, and Gail Cope is not, and has never been, liable on that credit card account.

3.    MBNA's re-investigation of Gail Cope's dispute, pursuant to the procedures provided by the FCRA, was "unreasonable."

By granting summary adjudication on the above facts and issues, the court will narrow the issues for trial to one: damages.

## PLAINTIFF'S STATEMENT OF FACTS

**I.    Rachel's credit cards with MBNA.**

---

[1] 15 U.S.C. §1681 *et seq.*

Page 2 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

Sometime in June 1994, after she turned 18 years old, Rachel independently applied for and received a new Visa credit card account with MBNA (the "MBNA Visa Card Account").[2] MBNA's computer generated records show Gail Cope on Rachel's MBNA Visa Card Account as a co-applicant and co-guarantor.[3]

Rachel's original MBNA Visa Card Account was under account number 4313-0228-7401-0067.[4] In or around September 1998, that Visa account number was changed slightly in the last four digits to 4313-0228-7401-2485, apparently due to the card being lost or stolen.[5] In or around March 1999, the Visa account number was again changed in the last four digits to 4313-0228-7401-2527, in all probability for the same reason.[6] The Visa account number was changed for a final time in the last four digits to 4313-0228-7401-2543 in or around October 1999.[7] From October 1999 on, MBNA deleted Gail Cope's name from Rachel's MBNA Visa Card Account billing statements. Thereafter, no correspondence, of any type, including monthly credit card statements, was sent to or in Gail Cope's name.[8] MBNA has failed to explain why Gail Cope's name was deleted other than, obviously, that she was no longer on the account.

---

[2] Harris Dec., Exh. 2 (hereinafter "Rachel Depo."), p. 77, lns. 9-11 and p. 78, lns. 9-17.

[3] Harris Dec., Exh. 3. **\*Gail Cope denies ever being contacted about being a co-applicant or guarantor on the MBNA Visa Card Account; ever agreeing to be a co-applicant or guarantor on the MBNA Visa Card Account; or ever authorizing Rachel to list her as a co-applicant or guarantor on the MBNA Visa Card Account. Harris Dec., Exh. 1 (hereinafter "Gail Cope Depo."), p. 29, ln. 22 through p. 32, ln. 7. Rachel concurs. Rachel Depo., p. 115, ln. 21 through, p. 116, ln. 7. This dispute of fact, however, is immaterial to this motion for summary adjudication. For purposes of this motion and this motion alone, Gail Cope acknowledges that MBNA's records show that she was a co-applicant and guarantor on the original 1994 MBNA Visa Card Account.**

[4] Harris Dec., Exh. 4.

[5] Harris Dec., Exh. 5; Rachel Depo. p. 149, ln. 25 through p. 150, ln. 14.

[6] Harris Dec., Exh. 6; Rachel Depo. p. 150, ln. 21 through p. 151, ln. 12.

[7] Harris Dec., Exh. 7; Rachel Depo. p. 151, ln. 13 through p. 152, ln. 12.

[8] Harris Dec., Exh. 8, (MBNA designated witness, hereinafter "English Depo."), p. 178, ln. 4 through p. 179, ln. 21; p. 180, lns. 16-24; p. 181, lns. 1-20; Harris Dec., Exh. 7.

Page 3 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

In April 2000, according to MBNA's records, Rachel's MBNA Visa Card Account (account number 4313-0228-7401-2543) was closed and the existing balance transferred to a new MBNA *MasterCard* account, with a totally different account number:  5490-9915-8600-0065 ("the MBNA MasterCard Account").[9]  This was done at Rachel's request and was accomplished by means of a "C&T" procedure by MBNA which, according to MBNA's designated witnesses, stands for "close and transfer."   "C&T" at MBNA is used to close one account and move the outstanding balance to a new account.[10]  MBNA's notice offering this "close and transfer" opportunity would have been mailed only to Rachel, and would not have been sent to Gail Cope.[11]  Each account has its own unique number, and a different number identifies each unique, specific account.[12]

## II.    The MBNA Credit Card Agreement.

The terms and conditions of the original 1994 MBNA Visa Card Account carried over and applied to all subsequent accounts including the new MBNA MasterCard Account.[13]  MBNA produced a copy of the credit card agreement which was given to Rachel at the time the MBNA Visa Card Account was opened in June 1994, and which would have controlled each of her Visa accounts and Rachel's new MBNA MasterCard Account (the "Credit Card Agreement").[14]  The Credit Card Agreement provided that persons responsible for the "account" are those "who initially or subsequently *request*, *accept* or *use* the account."[15]  (Emphasis

---

[9] Harris Dec., Exhs. 9 and 10 (p. 1).

[10] *Id*; Rachel Depo. P. 212, ln. 18 through 216; English Depo., p. 93, lns. 1-22; Harris Dec., Exh. 11 (MBNA designated witness, hereinafter "O'Donoghue Depo."), p. 23, lns. 14-22, p. 82-83, ln. 6.

[11] O'Donoghue Depo., p. 43, lns. 6-12, p. 67, lns. 8-25, p. 68-69, lns. 1-3.

[12] *Id* at p. 70, lns. 5-25, p. 71, lns. 1-3, lns. 17-25, p. 72, lns. 1-11.

[13] *Id* at p. 47, lns. 8-17, p. 69, lns. 12-25, p. 70, lns. 1-4; Harris Dec., Exh. 12, p. 6.

[14] Harris Dec., Exh. 13; O'Donoghue Depo., p. 48, lns. 18-23; English Depo., p. 72, ln. 21 through p. 73, ln. 9.

[15] Harris Dec., Exh. 13, p. 1.

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

added).  As MBNA's designated witness acknowledged, a person can "accept" a card only by mailing the acceptance back signed or by making a telephone call and activating the card.[16]

Gail Cope did not **request** the April 2000 MBNA MasterCard Account, nor did she ever **use** that account.[17]  Gail Cope never mailed any **acceptance** of that account back to MBNA, nor did she ever call to activate that account.[18]  There is no documentation showing Gail Cope having signed any application in connection with Rachel's MBNA MasterCard Account or MBNA Visa Card Account.[19]

## III.    MBNA's reporting on Gail Cope's credit files.

Later, Rachel defaulted on the MBNA MasterCard Account, which had an approximate balance of $14,000, and subsequently filed for bankruptcy in or around August 2003.[20]  MBNA reported the default of Rachel's MBNA MasterCard Account on Gail Cope's credit files with credit reporting agencies.[21]  Gail Cope first discovered MBNA's reporting of Rachel's MBNA MasterCard Account on her credit files in early 2002 when Gail Cope and her husband, Mylo Cope, applied for a home mortgage refinance with World Savings.[22]  At that time, the Copes were informed of the derogatory reporting of Rachel's MBNA MasterCard Account on Gail Cope's credit files.[23]  Although World Savings was prepared initially to deny the loan because of MBNA's derogatory credit reporting in Gail Cope's credit files, expeditious efforts by Mylo Cope reinstated the refinancing and avoided any adverse action by World Savings.[24]

---

[16] O'Donoghue Depo., p. 25, lns. 9-20, p. 66, ln. 25 through p. 67, ln. 7..
[17] Gail Cope Aff., ¶12..
[18] *Id*; Gail Cope Aff., ¶4.
[19] English Depo., p. 182, lns. 4-10.
[20] Rachel Depo., p. 67, ln. 9 through, p. 68, ln. 11; Mylo Cope Aff., ¶7.
[21] Gail Cope Aff., ¶5.
[22] Gail Cope Depo., p. 108, ln. 17 through p. 109, ln. 15.
[23] *Id* at p. 110, lns. 8-25; Mylo Cope Aff., ¶¶3 and 4.
[24] Mylo Cope Aff., ¶5.

Page 5 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

Following discovery of the derogatory credit reporting, Mylo and Gail Cope began a series of contacts directly with MBNA, by telephone and letters, attempting to show MBNA that the credit entries in connection with Rachel's MBNA MasterCard Account did not belong in Gail Cope's credit record.[25]  MBNA personnel advised the Copes that they would review the matter.[26] The review was undertaken following Gail Cope's letter to MBNA dated September 17, 2002.[27] Upon initial review of Gail Cope's complaint, MBNA's representative, Dawn Williams, determined that the MBNA MasterCard Account did not belong to Gail Cope and that the derogatory reporting should be deleted due to MBNA's inability to prove Gail Cope's signature on any application.[28]  Dawn Williams subsequently contacted MBNA's department responsible for deletions (the "nonresponsible unit") and advised them of her determination to remove Gail Cope.[29]  MBNA's representative in the nonresponsible unit then submitted a customer service inquiry stating the application was "too old to prove signature for [Gail Cope]."[30]  Soon after, MBNA appears to have had an internal disagreement and, eventually, Dawn Williams's determination to remove Gail Cope was rejected because of a "credit decision."[31]  MBNA refused to alter its position.  MBNA continued to publish the derogatory information for more than 18 months following the Copes' initial contact.[32]

Not only did MBNA report Rachel's MBNA MasterCard Account on Gail Cope's credit files, but it also began contacting her in attempts to collect the $14,000 balance.[33]  Gail Cope

---

[25] *Id* at ¶6; Gail Cope Aff., ¶2; Harris Dec., Exh. 10, pgs. 3-4.
[26] Gail Cope Aff., ¶2.
[27] Harris Dec., Exh. 20.
[28] English Depo. p. 127, ln. 4 through p. 128, ln. 14; Harris Dec., Exh. 10, p. 11.
[29] English Depo. p. 130, lns. 14-20; Harris Dec., Exh. 10, pgs. 16-17.
[30] *Id.*
[31] English Depo. p. 134, lns. 8-12, 17-24, p. 135, lns. 1-2; Harris Dec., Exh. 10, pgs. 17-18.
[32] Mylo Cope Aff., ¶8; Gail Cope Aff., ¶11.
[33] Gail Cope Aff., ¶6; Gail Cope Depo., p. 148, lns. 3-9.

Page 6 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

disavowed responsibility for the MBNA MasterCard Account and demanded proof of MBNA's claim that she was responsible.[34]  MBNA was unable to produce any original records with Gail Cope's signature.[35]

## IV.    Gail Cope's formal dispute.

In early 2003, Gail Cope wrote the three major credit reporting agencies (Equifax, Trans Union and Experian) disputing MBNA's reporting of the MBNA MasterCard Account and demanded that they conduct reinvestigations pursuant to the FCRA.[36]  Equifax was the first credit reporting agency (CRA) to report back to Gail Cope on its reinvestigation.  Equifax wrote Gail Cope on February 24, 2003 informing her that the MBNA MasterCard Account was deleted from her credit files because MBNA failed to timely respond to Equifax's reinvestigation.[37]

Experian was the next agency to report back.  Experian wrote Gail Cope on March 28, 2003 stating that the MBNA MasterCard Account was verified.[38]  That is, MBNA had responded to Experian's reinvestigation that the MBNA MasterCard Account information it was reporting was accurate information.[39]

Trans Union was the last agency to report back to Gail Cope.  It wrote Gail Cope on May 20, 2003 informing her that it had deleted the MBNA MasterCard Account because MBNA instructed it to do so.[40]  MBNA's actual response to Trans Union was, "Removed from credit report – does not belong to consumer."[41]

---

[34] Gail Cope Depo., p. 118, lns. 7-18.
[35] *Id.*
[36] Gail Cope Aff., ¶7; 15 U.S.C. 1681i.
[37] Harris Dec., Exh. 14; Harris Dec., Exh. 15 (hereinafter "Equifax Depo.") p. 5, lns. 12-21and p. 6, lns. 11-14; 15 U.S.C. §1681i(a)(1) requires reinvestigations to be completed within 30 days.
[38] Harris Dec., Exh. 16.
[39] Harris Dec., Exh. 17, p, 1.
[40] Harris Dec., Exh. 18; Harris Dec., Exh. 19 (hereinafter "Trans Union Depo."), p. 2, and p. 4.
[41] Harris Dec., Exh. 19, p. 8.

Page 7 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

Thereafter, Gail Cope, individually and through her husband, Mylo Cope, made numerous contacts with MBNA seeking proof of an application signed by Gail Cope and an explanation for MBNA's disparate reporting to Equifax, Experian, and Trans Union.[42]  MBNA stated that it did not have an original application or any other documentation that showed Gail Cope consenting to be responsible for the MBNA MasterCard Account.[43]  Nevertheless, MBNA continued reporting Rachel's MBNA MasterCard Account on Gail Cope's file to consumer reporting agencies through 2003.[44]

Only after Gail Cope retained legal counsel who sent a demand letter to MBNA did MBNA direct Experian to delete the MBNA MasterCard Account from Gail Cope's credit files—consistent with what MBNA had directed Trans Union to do nearly ten months earlier.[45]  On or about January 21, 2004, MBNA responded to Gail Cope's legal counsel that it had all along denied Gail Cope's demand to remove the MBNA MasterCard Account from her credit files because "billing statements were mailed to the attention of both Rachel and Gail Cope without question since the account was opened."[46]  Nevertheless, MBNA agreed to remove Gail Cope's name from the MBNA MasterCard Account on its internal documents and said it would direct all credit reporting agencies to delete the inaccurate reporting entries as well.[47]

---

[42] Gail Cope Depo., p. 158, ln. 10 through p. 159, ln. 15.
[43] *Id*.
[44] Gail Cope Aff., ¶3.
[45] Gail Cope Aff., ¶11.
[46] Harris Dec., Exh. 21.  **\*It is revealing to note the contradiction between Ms. Steele's letter and Ms. English's deposition where she testified that MBNA removed Gail Cope's name from the monthly billing statements as of October 1999**; see English Depo. p. 178, lns. 4-24; p. 179, lns. 1-21; p. 180, lns. 16-24; p. 181, lns. 1-20.
[47] Harris Dec., Exh. 21.

Page 8 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[48]  Once the moving party points out the absence of any genuine issue of material fact, the burden of production "shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried."[49]  The nonmoving party must set forth, by affidavits or other admissible evidence allowed by FRCP 56, "specific facts showing that there is a genuine issue for trial."[50]  While the facts are viewed in light most favorable to the non-moving party, "[d]eference to the non-moving party does have some limit."[51]

To survive a motion for summary judgment, a non-moving party "must set forth specific facts showing that there is a genuine issue for trial," and there must be more than the "mere existence of a scintilla of evidence" to support the non-moving party's position.[52]  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[53]

Under FRCP 56(d), the court may adjudicate less than all the claims at issue in an action for the purpose of establishing facts that are not in good faith controverted.  Under this rule, the court has authority to examine evidence and to question counsel to determine which facts are actually in controversy.  Further, the court may use the FRCP 56(d) motion as a procedural

---

[48] Fed. R. Civ. P. 56(c).
[49] *Petersen v. Cazemier*, 164 F. Supp. 2d 1217, 1221-1222 (D. Or. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).
[50] Fed. R. Civ. P. 56(e).
[51] *Petersen*, 164 F. Supp. 2d at 1222.
[52] *Id.*
[53] *Id* (quoting *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

device to narrow the issues for trial to those for which there is evidence.[54]  As such, in complex cases involving multiple issues, FRCP 56(d) may be used to limit issues for discovery and litigation so that the court and parties may focus on the truly contested issues.

## POINTS AND AUTHORITIES

### I.    MBNA is Not Entitled to the Qualified Immunity of 15 U.S.C. §1681h(e) with respect to Gail Cope's defamation claim.

The FCRA prohibits any action:

> [I]n the nature of defamation, . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency based on information disclosed pursuant to [the sections concerning disclosures to consumers and disclosure requirements for users of consumer reports][55] of this title or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer.[56]

This provision establishes a limited, qualified immunity for furnishers of information, like MBNA, under certain tort theories unless the information is false and the conduct involves malice or willful intent.  As disclosed herein, there is ample basis evidencing the falsity of MBNA's reported information and its willful intent.  However, we need not consider MBNA's limited, qualified immunity because, in this circumstance, the initial disclosure of the false and defamatory credit information by the user, World Savings, did not result in "adverse action"

---

[54] *Griffith v. Utah Power & Light Co.*, 226 F.2d 661, 670 (9th Cir. 1955).

[55] Qualified immunity arises only for claims based on information disclosed to consumers pursuant to 15 U.S.C. §§1681g, 1681h, and 1681m.  Sections 1681g and 1681h apply only to direct disclosures from consumer reporting agencies to consumers, therefore, they are not applicable in this instant case.  Section 1681m regards disclosures of derogatory credit information to consumers through users but which is discussed *infra*.

[56] 15 U.S.C. §1681h(e).

Page 10 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

being taken, a prerequisite for the statutory immunity.  The FCRA provides that "adverse action . . . has the same meaning as in section 1691(d)(6) of this title,"[57] which directs that "adverse action" means:

> . . . .[A] denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.

As Mylo Cope testified in his affidavit, "adverse action" was threatened, which led to the discovery of the derogatory reporting by MBNA on Gail Cope's credit report; but, was not "taken."[58]

Gail Cope's defamation claim against MBNA is not restricted to only those acts that are willful and/or malicious.  Because the FCRA's statutory immunity is not available to MBNA, prosecution of Gail Cope's claim should proceed under the standard elements of the tort of defamation.

## II.   MBNA defamed Gail Cope by falsely reporting Rachel's MasterCard Account on Gail Cope's credit files.

### A.   Elements of Defamation Claim.

Liability for defamation is premised on an unprivileged publication to a third person of false and defamatory matter concerning the plaintiff that damages the plaintiff's reputation.[59]  A defamatory communication is one that would "tend to diminish the esteem, respect, goodwill or confidence in which [the defamed] is held or to excite adverse, derogatory or unpleasant feelings

---

[57] 15 U.S.C. §1681a(k)(1).
[58] Mylo Cope Aff., ¶5.
[59] RESTATEMENT (SECOND) OF TORTS §568, comment d (1977); *Morrow v. II Morrow, Inc.*, 139 Or. App. 212, 218, 911 P.2d 964, *rev. denied*, 323 Or. 153 (1996) (Historically, Oregon courts look to the Restatement of Torts for guidance in the area of defamation).

Page 11 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

or opinions against [the defamed]."[60]  Even if a communication is not defamatory on its face, it may still be deemed defamatory if a reasonable person could draw a defamatory inference from the communication.[61]  To be actionable, a communication must be false.[62]  The traditional non-statutory remedy for inaccurate consumer reports is defamation.  Reported statements in a consumer report are libelous if false.[63]

> **B.    According to MBNA's own terms in its Credit Card Agreement, Gail Cope is not responsible for, or liable on, Rachel's MBNA MasterCard Account and, for that reason, MBNA's reporting was false.**

According to the Credit Card Agreement, Gail Cope was never a party responsible for Rachel's MBNA MasterCard Account, even if she ever was responsible on Rachel's *prior* MBNA Visa Card Account.  The agreement which states the terms and conditions of the contractual relationship between the parties is the Credit Card Agreement given to Rachel when she set up her MBNA Visa Card Account in 1994.  The testimony of MBNA's designated representative demonstrates that there was nothing in their records to indicate that any other agreement was given to Rachel or to Gail Cope, and the terms of the former account would have applied to the new account.[64]

Gail Cope never used or billed any charges to either the MBNA Visa Card Account (including the various successor VISA card accounts) or the MBNA MasterCard Account at issue here.  Gail Cope testified that she never called in to request this account, asked in writing to be on the account or agreed in any way to responsible for this account.[65]  MBNA can produce

---

[60] *Reesman v. Highfill*, 327 Or. 597, 603, 965 P.2d 1030 (1998) (internal quotations and citations omitted).
[61] *Id* at 604.
[62] *Id* at 603.
[63] *Trundle v. Homeside Lending, Inc.*, 162 F. Supp. 2d 396 (D. Md. 2001).
[64] O'Donoghue Depo., p. 46, ln. 8 through p. 47, ln. 17; p. 67, lns. 8 through p. 69, lns. 1-3.
[65] *Supra* notes 17-19.

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

nothing to show that Gail Cope called in or wrote in asking to be on this account.[66]  Gail Cope never received any of the bills on the MBNA Visa Card Account after October 1999, and never received a single bill on the MBNA MasterCard Account.[67]  Again, this is consistent with what MBNA later told Trans Union, that the MBNA MasterCard Account should be removed from Gail Cope's credit report because the account "does not belong to" Gail Cope.[68]

The key question under the controlling credit card agreement is whether Gail Cope requested, accepted or used "the account."  "The account" is not a defined term in the credit card agreement.  MBNA considers each account to have a separate and unique number, and each number to indicate a separate and unique account.[69]  In April 2000, when Rachel opened the MBNA MasterCard Account, which is at issue in this matter, it was issued with a unique and new account number, which was totally different than the account numbers which had been used for Rachel's previous MBNA Visa Card Accounts.[70]  MBNA's own records show that the previous Visa account was closed and the balance was transferred to the account with the new, unique MasterCard number.[71]  Even if Gail Cope was liable on Rachel's original MBNA Visa Account, the MBNA MasterCard Account was a completely new account with which Gail Cope had no involvement and of which she had absolutely no knowledge.  Applying basic contract construction principles, it is obvious that Gail Cope never "requested, accepted or used" the MBNA MasterCard Account, and therefore could never have been held liable after Rachel defaulted on that account.

"In the construction of an instrument, the office of the judge is simply to ascertain and

---

[66] English Depo., p. 182, lns. 4-14.
[67] *Supra* note 8 and 17.
[68] *Supra* notes 40 and 41.
[69] *Supra* notes 12.
[70] *Supra* note 11 and 12.
[71] *Supra* notes 9-11.

Page 13 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

declare what is, in terms or in substance, contained therein, not to insert what has been omitted . . .".[72]  The court looks to the terms of the contract itself to see if there is more than one plausible meaning to the words used, including words that were left out by the drafter, in its attempt to determine what the parties intended by the words they used.[73]  In the absence of an ambiguity, it is up to the court to interpret contracts as a matter of law and to determine what they mean and what the parties intended by the words they used.[74]  Courts must construe disputed contract language in accordance with the plain meaning of the words if there is only one such meaning.[75]

When the parties argue in favor of contrary meanings of contract language, the Court, in its effort to construe the contract according to its terms and conditions, must first see if the disputed term is defined in the contract.[76]  If the term is not defined, the Court must decide whether there is only one plain meaning, or instead if there is more than one plausible interpretation; that is, whether the language is ambiguous.[77]  Extrinsic evidence may be examined to help determine whether the language is ambiguous.[78]  If the contract is ambiguous, then the Court will attempt to determine and carry out the intent of the parties.[79]  How parties have conducted themselves can show what they intended the contract to mean.[80]  The practical construction or interpretation of a contract placed on it by the parties is entitled to great weight,

---

[72] Or. Rev. Stat. 42.230; *Booras v. Uyeda*, 295 Or. 181, 193 (1983).

[73] *Bennett v. Met. Life Ins. Co.*, 173 Or. 386, 411 (1944); Or. Rev. Stat. 42.240.

[74] *Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 405-406 (1995); *Yogman v. Parrott*, 325 Or. 358, 361, 364 (1997); Or. Rev. Stat. 42.240.

[75] *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469-470 (1992).

[76] *Id.*

[77] *Id.*

[78] *Bennett*, 173 Or. at 411 (insurer's opportunity to use more specific, clear language helps demonstrate ambiguity of language chosen by insurer).

[79] ORS 42.240; *Traders & Gen. Ins. Co. v. Freeman*, 81 F. Supp. 2d 1070, 1073 (D. Or. 2000); *OSEA v. Rainier School Dist. No. 13*, 311 Or. 188, 194 (1991).

[80] *Yogman*, 325 Or. at 364.

Page 14 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

particularly when the party has acted as though that party understands the contract in a way contrary to that party's own interest.[81]

If both possible meanings are still plausible, then the Court will apply the relevant maxims of construction, including construing the contract against the drafter and in favor of the interpretation offered by the non-drafting party.[82]  Moreover, it is presumed that absent material was intentionally left out.[83]

Applying these principles of construction and interpretation of contracts, it is obvious that Gail Cope was never a co-applicant or guarantor on the MBNA MasterCard Account.  The controlling agreement provides that a person is liable on "the account" if that person has requested, accepted or used "the account."  As noted above, "the account" is not a defined term.  There can be only one plausible interpretation of "the account," and that is to refer to that particular account, and not any predecessor or other account.  To the extent that the term "the account" is not ambiguous, the Court should enforce the contract as written.[84]

If "the account" is ambiguous, the fact that MBNA had the opportunity and interest in defining the term more carefully is significant.[85]  The absence of a definition is presumed to have been intentional by MBNA.[86]  Moreover, the way the parties conducted themselves (a highly significant factor in the analysis) shows that MBNA considered Gail Cope as not liable on this account, as evidenced by its response to Trans Union stating that the account belonged to another

---

[81] *Portland Web Pressmen's Union Local No. 17 v. Oregonian Publ'g Co.*, 188 F. Supp. 859, 865 (D. Or.), *aff'd.*, 286 F.2d 4, *cert. denied*, 366 U.S. 912, 6 L.Ed.2d 237, 81 S.Ct. 1086 (1961) ("The practical construction against interest, by a party to a contract, may constitute the strongest evidence of intent").
[82] *Hoffman Constr. Co.*, 313 Or. at 470-471.
[83] *Portland Web Pressmen's Union Local No. 17*, 188 F. Supp. at 865 (*expressio unius est exclusio alterius* - the expression of one thing is the exclusion of another).
[84] Or. Rev. Stat. 42.240.
[85] *Bennett*, 173 Or. at 411.
[86] *Portland Web Pressmen's Union Local No. 17*, 188 F. Supp. at 865.

Page 15 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

person and that the report showing Gail Cope as liable on the account was in error.[87]  This is particularly so because that interpretation was contrary to MBNA's interests at the time it made that statement to Trans Union.[88]  MBNA further demonstrated that it considered the new MBNA MasterCard Account in April 2000 to be separate and distinct from the prior MBNA Visa Card Accounts by using a separate account number (which MBNA's own representatives admitted established a different account) and by using a "Close & Transfer" procedure to close the existing MBNA Visa Card Account and open and transfer the balance to the new MBNA MasterCard Account.  MBNA's own statements and conduct show that MBNA understood that the MBNA Visa Card Account was separate and distinct from the MBNA MasterCard Account, and that the term "account" as used in the Credit Card Agreement could not refer to both accounts together.

If the term "the account" is ambiguous and the ambiguity is not resolved by the above analysis, the Court must apply the maxims of construction, including that the contract must be construed against the drafter (MBNA) and in favor of the interpretation offered by the non-drafting party (Gail Cope).[89]

Therefore, the question is whether Gail Cope ever requested, accepted or used the MBNA MasterCard Account (as opposed to the prior MBNA Visa Card Accounts).  A party has the right to state how another party can become liable on a contract (as MBNA has done here), and the other party to the contract can avoid liability thereon by showing that it has not become liable on the contract according to that party's directions.  "[T]here is no doubt that, under appropriate circumstances, a party may avoid a contract by establishing that he has not accepted it in the

---

[87] *Yogman*, 325 Or. at 364.
[88] *Portland Web Pressmen's Union Local No. 17.*, 188 F. Supp. at 865.
[89] *Hoffman Constr. Co.*, 313 Or. at 470-471.

Page 16 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

specific manner that it requires, as well as by establishing that the other party has not [accepted it in the required manner]."[90]   There is no evidence that Gail Cope ever asked for the MBNA MasterCard Account, and indeed she denies ever making such a request.[91]   Likewise, there is no evidence that Gail Cope ever "accepted or used" that new account, as she never even received any bills for the account or placed any charges on it.[92]   The only connection MBNA has asserted is that their computer records show Gail Cope as a co-applicant and guarantor on the original 1994 MBNA Visa Card Account, but that was a separate and different account than the MBNA MasterCard Account at issue here, as demonstrated above.   Accordingly, Gail Cope could not be held liable on the MBNA MasterCard Account at issue in this case.   Gail Cope should be granted summary adjudication of the fact that the statements published by MBNA to the effect that Gail Cope was liable on that MBNA MasterCard Account were false and defamatory as a matter of law.

### C.   MBNA's false reporting was willful or with malice.

Even if the limited, qualified immunity does apply in this situation, MBNA is still liable for defamation because it published false information about Gail Cope, as demonstrated above, and did so willfully or with malice.   Most federal courts have adopted the malice standards used by the U.S. Supreme Court in *New York Times v. Sullivan*, where malice is defined as acting with knowledge that the information is false or with reckless disregard of whether or not it is false.[93]   Oregon courts likewise have adopted the *New York Times* malice standards.[94]   In *St. Amant v.*

---

[90] *Hugie v. City of Shady Cove,* 85 Or. App. 229, 233, *rev. denied*, 303 Or. 699 (1987).
[91] *Supra* notes 17 and 18.
[92] *Id.*
[93] *Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir. 1980) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279 (1964)); *see also, Satern v. Montgomery Ward & Co.*, 362 S.E.2d 324 (Va. 1987); *Cisneros v. Trans Union*, 293 F. Supp. 2d 1167, 1177 (D. Haw. 2003); *Matthews v. Government Emples. Co.*, 23 F. Supp. 2d 1160, 1164 (S.D. Cal. 1998).
[94] *McNabb v. Oregonian Publ'g Co.*, 69 Or. App. 136, 140 (1984).

Page 17 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

*Thompson,* the U.S. Supreme Court clarified the "reckless disregard" standard, defining it in terms of a "high degree of awareness of probable falsity."[95]   While the reckless disregard standard is a subjective one, whether a defendant in fact entertained serious doubts as to the truth of the statement may be proved by inference drawn from objective facts.[96]  Courts thus routinely permit objective facts to be introduced to shed light on the defendant's mental state.[97]  While a failure to investigate is not itself actual malice, evidence that a defendant purposefully avoided the truth may be sufficient to support a finding of actual malice.[98]

Upon initial review of Gail Cope's dispute, MBNA's representative, Dawn Williams, determined that the MBNA MasterCard Account did not belong to Gail Cope and that the reporting should be deleted due to MBNA's inability to prove Gail Cope's signature on any application.[99]   Dawn Williams subsequently contacted MBNA's department responsible for deletions (the "nonresponsible unit") and advised them of her determination to remove Gail Cope.[100]  MBNA's representative in the nonresponsible unit then submitted a customer service inquiry stating the application was "too old to prove signature for [Gail Cope]."[101]  Soon after, there appears to be an internal disagreement at MBNA and, eventually, Dawn Williams's determination to remove Gail Cope was overturned by upper management.[102]  MBNA has failed to provide an explanation for that decision.[103]

---

[95] 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d. 262 (1968).
[96] *Id* at 732.
[97] *See, e.g., Harte-Hanks Communications v. Connaughton,* 491 U.S. 657, 109 S. Ct. 2678, 105 L. Ed. 2d. 562 (1989); *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d. 502 (1984).
[98] *Harte-Hanks Comm., supra.*
[99] English Depo. p. 127, ln. 4 through p. 128, ln. 17.
[100] *Id* at p. 128, lns. 14-20.
[101] *Id* at p. 131, lns. 2-17.
[102] *Id* at p. 134, lns. 8-12.
[103] It is insightful to note that Evan Hendricks, a nationally recognized expert in FCRA issues (see Harris Dec., Exh. 25, pgs. 1-3 and 24-26) and Gail Cope's designated expert witness, opines

Page 18 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

Regardless, the bold fact remains: MBNA representatives determined that Gail Cope's name should be removed from Rachel's MBNA MasterCard Account because of MBNA's inability to substantiate Gail Cope's signature on any application. These objective facts show the serious doubt MBNA had as to the truth of reporting the MBNA MasterCard Account on Gail Cope's files. Its decision to proceed and continue publishing derogatory credit reports about Gail Cope is in reckless disregard of the high degree of probable falsity.

Coupled with MBNA's internal findings and inconsistencies is the glaring evidence of MBNA's disparate responses to the credit reporting agencies. First, MBNA utterly failed to respond to Equifax, as required by the FCRA.[104] Second, it responded to Experian with verification—months after MBNA's internal findings of probably falsity.[105] Third, MBNA responded to Trans Union by directing Trans Union to remove Rachel's MBNA MasterCard Account from Gail Cope's credit report because the account "[did] not belong to consumer."[106] In Gail Cope's case, MBNA's three different responses to each of the major credit reporting agencies (Equifax, Trans Union, and Experience) show MBNA's reporting was in reckless disregard of the harm and injury that such inconsistency would heap upon Gail Cope.

Like *New York Times*, MBNA entertained serious doubt as to the truth of reporting Rachel's MBNA MasterCard Account on Gail Cope's credit files. Such doubt is proved by inferences drawn from objective facts. These facts expose MBNA as acting with knowledge that

---

that: "Creditors view credit reporting as an arm of debt collection . . . [even with debts] they know or should know are not the responsibility of the consumer. * * * In my opinion, MBNA continued to associate Mrs. Cope with Rachel's account because doing so would increase the likelihood of collecting the unpaid debt. MBNA also considered the credit report as its primary tool for making this happen." Harris Dec., Exh. 25, p. 18 and Exh. 23, p. 218.

[104] *Supra* note 37.
[105] *Supra* notes 38 and 39.
[106] *Supra* notes 40 and 41.

Page 19 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

the information it was reporting was false and was published in reckless disregard of its impact upon Gail Cope.

Based on the facts and law set forth, above, the court should find that the MBNA has no qualified immunity under the FCRA; the MasterCard Account is not, and never has been, Gail Cope's credit card account; and, that the information furnished or published by MBNA was false. If necessary, the court should find the false reporting was done willfully or with malice, *i.e.*, in reckless disregard of its probable falsity.

## III. MBNA violated the FCRA by falsely reporting Rachel's MBNA MasterCard Account on Gail Cope's credit files and by failing to conduct a "reasonable investigation."

Congress's purpose in adopting the Fair Credit Reporting Act is addressed in the *Bryant v. TRW, Inc.*:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason . . . . The loss of a credit card can, of course, be expensive, but, as Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.[107]

### A. The FCRA imposes strict duties on furnishers of information.

First, the FCRA prohibits furnishers of information from reporting inaccurate information. No information may be furnished if the furnisher knows or consciously avoids knowing that the information is inaccurate.[108] The furnisher does not need to know that the

---

[107] 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).
[108] 15 U.S.C. §1681s-2(a)(1)(A). *Although MBNA violated §1681s-2(a)(1)(A), private right of action is unavailable.

Page 20 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

information is in fact inaccurate if it has avoided knowing the truth.[109]  Accordingly, a furnisher cannot unreasonably disregard information which makes the inaccuracy plain.[110]

Second, upon notice from a consumer reporting agency ("CRA") of a dispute, a furnisher must conduct an "investigation."[111]  The formal method for a consumer to dispute the accuracy of information under the FCRA is to initiate a reinvestigation under 15 U.S.C. §1681i with the CRA.  Once a formal dispute has been lodged with the CRA, the CRA must forward the complaint to the furnisher.[112]  After receiving a dispute notice from a CRA, the furnisher must conduct its own investigation of the accuracy and completeness of the disputed information.[113]  The FCRA does not specify the standards or procedures for the investigation.  Courts have, however, adopted the "reasonable investigation" standard.[114]  Any furnisher who fails to comply with those requirements of the reinvestigation process is liable to the consumer in a private cause of action for its negligent or willful noncompliance.[115]

### B.     MBNA violated §1681s-2(b)(1)(A) of the FCRA by failing to conduct a "reasonable investigation."

#### 1.     Reasonable investigation standard.

In *Johnson v. MBNA*, the most notable case in this area, the Fourth Circuit elaborated on the "reasonable investigation" standard and, in so doing, affirmed the judgment of the district

---

[109] *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).
[110] National Consumer Law Center, Fair Credit Reporting, §3.4.3 (5th Ed. 2002).
[111] 15 U.S.C. §1681s-2(b).
[112] 15 U.S.C. §1681i(a)(2).
[113] 15 U.S.C. §1681s-2(b).
[114] *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004); *Danielson v. Experian Info. Solutions Inc.*, 2004 WL 1729871 (D. Minn. July 30, 2004); *Ayers v. Equifax Inf. Serv.*, 2003 WL 23142201 (E.D. Va. Dec. 16, 2003); *Buxton v. Equifax Info. Servs.*, 2003 WL 228442245 (N.D. Ill. Dec. 1, 2003); *Zotta v. Nationscredit Fin. Servs.*, 297 F. Supp. 2d 1196 (E.D. Mo. 2003); *Evantash v. G.E. Capital Mortgage Serv., Inc.*, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003); *Betts v. Equifax Credit Info. Servs.*, 245 F. Supp. 2d 1130 (W.D. Wash. 2003).
[115] 15 U.S.C. §1681n and o.  *See also Nelson*, 282 F.3d at 1059.

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

court in which a jury determined that MBNA's standard investigation procedures were not reasonable.[116]  Discussing the requirement that the investigation must be reasonable, the Fourth Circuit declared: "We therefore hold that §1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified."[117]  The Fourth Circuit rejected MBNA's contention that the statute "does not contain any qualitative component" for trier's of fact to assess whether any investigation is reasonable by concluding:

> The key term here, "investigation," is defined as "[a] detailed inquiry or systematic examination" . . . "[a] searching inquiry" . . . the plain meaning of "investigation" clearly requires some degree of careful inquiry by the creditors.[118]

The reasoning and holding offered in *Johnson v. MBNA* are consistent with those of every district court to consider a §1681s-2(b) claim.[119]  Since it was published, it does not appear that any district or circuit court has criticized or contradicted *Johnson v. MBNA*.

Consistent with the Fourth Circuit, the Federal Trade Commission, which has federal administrative jurisdiction in FCRA matters, in a position expressed in a consent order, stated that furnisher must refer to original account records when reinvestigating a debt.[120]  Thus, if the

---

[116] *Johnson*, 357 F.3d at 426.
[117] *Id* at 431.
[118] *Id* at 430.
[119]  *See Agosta v. Inovision, Inc.,* 2003 WL 22999213, at *5 (E.D.Pa. Dec. 16, 2003); *Buxton,* 2003 WL 22844245 at *2; *Wade v. Equifax,* 2003 WL 22089694, at *2-*3 (N.D. Ill. Sept. 8, 2003); *Betts*, 245 F. Supp. 2d at 1135; *Olwell v. Med. Info. Bureau,* 2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003); *Kronstedt v. Equifax,* 2001 WL 34124783, at *16 (W.D. Wis. Dec. 14, 2001); *Bruce v. First U.S.A. Bank,* 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000).
[120]  *U.S. v. Performance Capital Management* at penultimate paragraph (Bankr. C.D. Cal. Aug. 24, 2000) (consent decree), available at www.ftc.gov/opa/2000/08/performance.htm (courtesy copy attached).

Page 22 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

furnisher learns during the investigation that original account records no longer exist for a disputed debt, the company must delete the information from credit bureau files.[121]

### 2.    Issue Preclusion/Collateral Estoppel.

*Johnson v. MBNA* has already found that MBNA's standard investigation procedures "unreasonable," in violation of the FCRA; accordingly, MBNA is precluded or collaterally estopped from relitigating this issue.

A party is precluded from relitigating an issue under the doctrine of issue preclusion (also known as collateral estoppel).  Oregon courts have stated, if one tribunal has decided an issue, issue preclusion prevents relitigation of that same issue in another proceeding if:

1.    The issue is identical;

2.    The issue was actually litigated and was essential to the final decision upon the merits in the first proceeding;

3.    The party to be precluded had a full and fair opportunity to be heard on the issues in the first proceeding; and,

4.    The party to be precluded was a party, or in privity, to the prior proceeding.[122]

Likewise, these principles have been widely applied in the federal courts.[123]  Moreover, issue preclusion may be adjudicated on summary judgment.[124]

---

[121] *Id.*

[122] *Washington County Police Officers v. Washington County*, 321 Or. 430, 435 (1995).

[123] *Montana v. United States*, 440 U.S. 147, 153, 162 (1979); *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 171 (1984).

[124] *See, Resolution Trust Corp. v. Keating*, 186 F.3d 1110 (9th Cir. 1999); *Verret v. DeHarpport*, 49 Or. App. 801, 621 P.2d 598 (1980); *Secor Investments, LLC v. Anderegg*, 188 Or. App. 154, 71 P.3d 538 (2003).

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

In this case, MBNA has previously litigated (including the appeal to the Fourth Circuit) the precise issue that is before the court in the instant case.[125]  In *Johnson v. MBNA*, the account at issue was an MBNA MasterCard account.[126]  The parties disagreed as to whether the plaintiff was a co-applicant for the account and, therefore, one who was legally obligated to pay the amounts owed.[127]  Like Gail Cope's circumstance, MBNA contended that Linda Johnson was a co-applicant and thus a co-obligor on the account following the default and then bankruptcy filing of the original obligor.[128]  Like Gail Cope, Johnson disputed the MBNA account directly with MBNA and later through credit reporting agencies.[129]

As with Gail Cope, the credit reporting agencies in *Johnson v. MBNA* responded by sending to MBNA an Automated Consumer Dispute Verification ("ACDV").  In response to the ACDV inquiry, MBNA reviewed its computerized Customer Information System ("CIS") and "verified" that the disputed information was correct.[130]  Further, as in Gail Cope's case, MBNA's written practices and procedures, referred to as "Desktop Procedures,"[131] required only that MBNA personnel responding to the ACDV confirm two of four pieces of information contained in the CIS system—name, address, social security number, or birth date—in order to "verify the account."[132]  Following the close of evidence in the *Johnson v. MBNA* case, the jury found that

---

[125]  *Johnson*, 357 F.3d at 426.
[126]  *Id* at 428.
[127]  *Id*.
[128]  *Id* at 429.
[129]  *Id*.
[130]  *Id*.
[131]  Harris Dec., Exh. 24.
[132]  *Id* at 431.

Page 24 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

MBNA had negligently failed to comply with the §1681s-2(b)(1) of the FCRA by failing to conduct a "reasonable investigation."[133]

> Significant in its review of MBNA's "Desktop Procedures," the Fourth Circuit held:
>
> As explained above, MBNA was notified of the specific nature of Johnson's dispute—namely, her assertion that she was not a co-obligor on the account. Yet MBNA's agents testified that their investigation was primarily limited to (1) confirming that the name and address listed on the ACDVs were the same as the name and address contained in the CIS, and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account. The MBNA agents also testified that, in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications.[134]

Accepting this evidence, the Fourth Circuit upheld the jury's determination that MBNA did not reasonably investigate the accuracy of the information in its CIS.

The issue in Gail Cope's case is identical: Did MBNA conduct a reasonable investigation following her complaint to each of the consumer reporting agencies (Experian, Trans Union and Equifax) and thereafter the transmission of ACDVs to MBNA in January-March 2003? MBNA used the same "Desktop Procedures" with regard to Gail Cope that were found to constitute an unreasonable investigation in *Johnson v. MBNA*. The question was actually litigated and was essential to the findings and conclusions in *Johnson v. MBNA* at both the trial court level and in the opinion at the Court of Appeals. MBNA had a full and fair opportunity to be heard on the matter by offering testimony, exhibits and arguments of counsel. MBNA was a defendant in that action just as it is a defendant in the pending matter. Therefore, MBNA should be barred from

---

[133] *Id* at 429.
[134] *Johnson*, 357 F.3d at 429.

Page 25 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR 97035
(503) 968-1475

further litigating the reasonableness of its investigation in the pending matter.  As a matter of law, this court should find that MBNA's investigation practices and procedures, as applied in the instant case, were unreasonable and therefore in violation of the FCRA.

> **3.     Even if MBNA is not precluded/collaterally estopped, the court can find as a matter of law on undisputed material facts that MBNA's investigation procedures are unreasonable.**

If the court determines that the issues and claims in the instant case are dissimilar from *Johnson v. MBNA* and, therefore, preclusion/collateral estoppel does not apply, it is still clear MBNA did not conduct a meaningful investigation.

During the relevant period, MBNA employed about 13 credit reporting specialists in a separate department to handle credit reporting disputes received from CRAs.[135]   These employees process approximately 250 disputes per work day.[136]

The only tool the MBNA employees use to handle a "not responsible" or "ownership" dispute, like in this case, is the MBNA "Customer Information System" ("CIS").[137]   The CIS consists of a front screen that contains the general account data - the name, address, social security number and date of birth currently listed by MBNA for that account.[138]   It also contains some very limited data about the account, such as account number and date of last address change.[139]   For most credit reporting disputes, including all of those in this case, the MBNA employees are instructed to consult only this one-page cover screen (i.e., the Customer

---

[135] English Depo., p. 167-168, ln. 18.
[136] *Id* at p. 169-170, ln. 5.
[137] *Id* at p. 40-41, lns. 15.
[138] *See* Harris Dec., Exh. 17.
[139] *Id.*

Page 26 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

Information Screen).[140]   The only "investigation" which MBNA conducts is to compare the name, address, social security number and date of birth listed on the Customer Information Screen with the same four items listed by the consumer reporting agency in its automatic consumer dispute verification (ACDV).[141]   If two of the four items match, MBNA responds to the consumer reporting agency, "verified as reported."[142]

On occasion, an MBNA employee may also look through the rest of the Customer Information System (CIS) which contains a chronological list of idiosyncratic comments placed in the computer file by the shorthand of the particular department or employee who was dealing with the account or customer at an earlier time.[143]   However, if the identifying information contained in the front screen matches the identifying information previously reported to the credit reporting agency, then the MBNA employee will ignore the comments section.[144]

During the relevant period, MBNA would not permit or provide a means for its "investigating" employees to check underlying documents.[145]   The credit reporting specialists could only use the CIS and did not check for signed applications, signature cards, charge slips, previous letters or correspondence or other documents.  Even if MBNA learned that it had none of these documents to support its assertion of liability on a consumer, it still would report the account "verified" if its records contained two of the identifying segments, such as name and

---

[140] English Depo. p. 169-170, ln. 5.
[141] *Id* at p. 144, lns. 20-24, pgs. 145 through 147, ln. 15; Harris Dec., Exh. 24 and 17.
[142] *Id.*
[143] English Depo. p. 147, ln. 19 through 148, ln. 6.
[144] *Id* at p. 146, ln. 16 through p. 147, ln. 15.
[145] Hendricks Depo., p. 159, lns. 17-22, p. 160, lns. 1-15.

Page 27 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

social security number.[146]  In other words, if some MBNA employee were to accidentally enter incorrect information into their computer system, MBNA would never verify that incorrect information because, if the information is "on the screen," MBNA considers that a "reasonable investigation" and would look no further in responding to a credit reporting agency.

By the time that Gail Cope began to make her disputes with the CRAs, January through March 2003, MBNA had received notice of the deficiencies in its procedures and policies.[147] First, it knew of the outcome *Johnson v. MBNA* in which the jury had determined that their procedures were unreasonable.  Second, in December 2003, MBNA had received a detailed analysis criticizing its investigation procedures by Evan Hendricks, editor and publisher of *Privacy Times* and an industry expert.[148]  The more information Gail Cope gave, the more apparent MBNA's recalcitrant behavior became.

Consistent with this position is the testimony of Anne P. Fortney, MBNA's *own* designated expert witness, who at her deposition on September 28, 2005 testified as follows:

> Q:  And would you agree that if the reinvestigation failed to look at those [underlying documentation relating to the Cope dispute], that the reinvestigation would not be reasonable?
>
> A:  That if the investigation did not include the CIS notes?
>
> Q:  Right.  At least with respect to the Cope matter?
>
> A:  Yes.
>
> Q:  That it would not be a reasonable investigation?

---

[146] *Id* at p. 174, lns. 9-21.
[147] *Id*.
[148] *Id* at p. 228, lns. 17-22, pgs. 229 through 231, ln. 12; Harris Dec., Exh. 25, pgs. 12-13.

Page 28 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

A:  Correct.  Because of the information available to the person doing the investigation which was all of the CIS notes that were there.

Q:  Okay.

A:  It would have been unreasonable to ignore the information that was available.[149]

Based on the facts and law, the court should find, as a matter of law, that MBNA's FCRA investigation practices and procedures as employed in the present case have been finally adjudicated as "unreasonable" and that MBNA is precluded or collaterally estopped from relitigating the issue.  In the alternative, this court should find that MBNA's FCRA investigation practices and procedures, as applied in this case, were unreasonable and in violation of the FCRA as a matter of law.

> **4.    MBNA's failure to conduct a reasonable investigation meets both the "negligent" and "intentional" state of mind standard.**

To prevail on her claim under 15 U.S.C. §1681s-2(b)(1), Gail Cope must establish that MBNA's failure to conduct a reasonable investigation was either negligent or intentional.[150]  As established above, it cannot be disputed that MBNA's errors in this regard were, at the bare minimum, negligent.  Moreover, there is substantial evidence for the court to conclude, as a matter of law, that MBNA's unreasonable investigation procedures were intentionally created and maintained by MBNA.  MBNA received the jury's verdict in *Johnson v. MBNA* in January 2003.  In December 2003, following Congressional testimony, MBNA received the letter of admonition prepared by Evan Hendricks informing MBNA in detail of the deficiencies in its

---

[149] Harris Dec., Exh. 22 (MBNA's expert witness, hereinafter "Fortney Depo."), p.120, lines 6-21.
[150] 15 U.S.C. §1681 n and o.

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475

Desktop Procedures.  MBNA's continued utilization, even to this day, of the same Desktop Procedures, which have been found to violate the FCRA, can be characterized as intentional.

## <u>CONCLUSION</u>

At every stage of its dealings, MBNA has breached its duties to Gail Cope.  MBNA's conduct and omissions are glaring.  Gail Cope is not and never has been liable for Rachel's MBNA MasterCard Account.  That single truth lies at the heart of MBNA's offense.  Based on the above law and facts, the court should grant summary adjudication in favor of Gail Cope on the following points:

1.    Regarding the common law defamation claim, MBNA is not entitled to qualified immunity under 15 U.S.C. § 1681h(e) because the user took no "adverse action" based on false and derogatory information furnished by MBNA to Gail Cope's credit file.

2.    The disputed MBNA MasterCard credit card account is not, and never has been, Gail Cope's credit card account, and Gail Cope is not, and has never been, liable on that credit card account.

3.    MBNA's re-investigation of Gail Cope's dispute, pursuant to the procedures provided by the FCRA, was "unreasonable."

/ / /


/ / /


/ / /


/ / /

Page 30 - **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY ADJUDICATION OF FACTS AND ISSUES**

DATED this 18th day of November, 2005.

HARRIS BERNE CHRISTENSEN LLP


By:___/s/ Roger K. Harris_____
       Roger K. Harris, OSB #78046
       Craig R. Berne, OSB #87420
       Shawn M. Lindsay, OSB #02069
       Of Attorneys for Plaintiff
       Telephone: (503) 968-1475
       Fax: (503) 968-2003
       E-mail: roger@HBClawyers.com
       E-mail: shawn@HBClawyers.com

HARRIS BERNE CHRISTENSEN LLP
5000 S.W. Meadows Road, Suite 400
Lake Oswego, OR  97035
(503) 968-1475



**Federal Trade Commission**
600 Pennsylvania Avenue, NW
Washington, DC 20580

For Release: August 24, 2000

RELATED DOCUMENTS:

## California Debt Collection Agency Settles FTC Charges Of Fair Credit Reporting Act Violations

*United States of America v. Performance Capital Management, Inc.*

Complaint
Consent Decree

The Federal Trade Commission today announced a proposed settlement with a California-based debt collection agency, Performance Capital Management, Inc. (PCM), under which the company would be fined $2 million and enjoined from what the FTC called "serious violations" of Section 623 of the Fair Credit Reporting Act (FCRA). According to the terms of the proposed settlement, payment of the fine would be waived due to the company's poor financial condition.

The FCRA regulates the collection and dissemination of sensitive information about consumers by credit bureaus and other types of consumer reporting agencies. Section 623 was added by Congress in the 1996 amendments to increase the accuracy of consumer reports by imposing specific duties upon any entity that furnishes information to a consumer reporting agency. The settlement announced today is the Commission's first enforcement action under Section 623.

PCM is a California corporation with headquarters in Irvine, California. It specializes in buying and collecting consumer debt that has been charged-off by the original creditor as uncollectible. PCM is currently in bankruptcy, and the Commission has waived the $2 million civil penalty based upon the financial condition of the company.

In its complaint against PCM, the Commission alleges that PCM violated a number of requirements imposed by Section 623. First, the complaint alleges that PCM provided credit bureaus with inaccurate "delinquency dates" for its accounts. Section 623 defines the delinquency date for an account as the month and year that an account first became delinquent. This date is important because it is used by credit bureaus to measure the seven-year period that negative credit information may be reported under the FCRA.

According to the Commission, PCM systematically reported accounts with delinquency dates that were more recent than the actual date of delinquency, resulting in negative information remaining on consumers' credit reports long beyond the seven-year period mandated by the FCRA. The Commission's complaint also alleges that PCM violated Section 623 by ignoring or failing to investigate

consumer disputes referred by credit bureaus, and by failing to notify credit bureaus when consumers disputed collection accounts with PCM.

The proposed settlement would require PCM to provide correct delinquency dates when reporting collection accounts to credit bureaus. The agreement also mandates the proper investigation of disputes. Where PCM learns during an investigation that account records no longer exist for a disputed debt, the company must delete the information from credit bureau files within five days. Finally, the agreement would require PCM to report as "disputed" all accounts where consumers have disputed the information with PCM.

The Commission vote to file the complaint and proposed settlement was 5-0. The proposed settlement will be presented to the U.S. Bankruptcy Court for the Central District of California, which is overseeing PCM's bankruptcy. If approved, the agreement will be filed in the U.S. District Court for the Central District of California.

---

**NOTE:** The agreement referenced in this release is for settlement purposes only and does not constitute an admission of a law violation.

Copies of the complaint and proposed settlement are available from the FTC's Web site at *http://www.ftc.gov* and also from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580; 877-FTC-HELP (877-382-4357); TDD for the hearing impaired 1-866-653-4261. To find out the latest news as it is announced, call the FTC NewsPhone recording at 202-326-2710.

**MEDIA CONTACT:**
    Mitchell J. Katz,
    *Office of Public Affairs*
    202-326-2161

**STAFF CONTACT:**
    Peggy Twohig,
    *Bureau of Consumer Protection*
    202-326-3224

FTC File No.: 982-3542
(http://www.ftc.gov/opa/2000/08/performance.htm)