IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GAIL M. COPE,                                              04-CV-493-BR

        Plaintiff,

                              OPINION AND ORDER

v.

MBNA AMERICA BANK, NA, a
national banking association,

        Defendant.


ROGER K. HARRIS
Harris Berne Christensen LLP
5000 SW Meadows Road, Suite 400
Lake Oswego, OR 97035-2224
(503) 968-1475

        Attorneys for Plaintiff

ABRAHAM J. COLMAN
DEBORAH E. YIM
Buchalter Nemer, P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  9017-2457
(213) 891-0700

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion for Summary Judgment (#37), Plaintiff's Motion for Summary Judgment (#41), and Plaintiff's Motion to Strike (#62).  For the reasons that follow, the Court **DENIES** Plaintiff's Motions, **GRANTS** Defendant's Motion, and **DISMISSES** this matter.


## <u>BACKGROUND</u>

The following facts are undisputed unless otherwise noted:

Plaintiff Gail Cope and her daughter Rachel Cope applied over the telephone for a joint credit card from Defendant. Defendant received "verbal authorizations" from Rachel Cope and Plaintiff during the telephone application.  On June 6, 1994, Defendant opened a joint credit-card account for Plaintiff and Rachel Cope.  Defendant changed the account number at least three times from 1994 to 2001 after the originally-issued credit card was reported lost.

From July 1994 through October 1999, Defendant mailed monthly account statements addressed to both Plaintiff and Rachel Cope to Plaintiff's home address.  In addition, from September 1995 through December 1995, January 1996 through April 1996, and September 1996 through December 1996, Defendant mailed the statements to Rachel Cope's school address.  Rachel Cope was in Italy from July 1997 to February 1999.  During that time,

2 - OPINION AND ORDER

Plaintiff made payments on the account.  After October 1999, Plaintiff's name no longer appeared on the monthly account statements because her address changed to one that consisted of more than two lines in Defendant's Customer Information System (CIS), which caused Plaintiff's name to drop off as an addressee on the account statements.  Plaintiff, however, still was listed as an account holder in Defendant's records and Defendant continued to report the account on Plaintiff's credit reports. Plaintiff made a payment on the account in May 2000, after her name no longer appeared on the account statements and after Rachel Cope had returned from Italy.

In April 2000, Defendant contends it "upgraded" the credit card to a Platinum MasterCard and changed the account number and listed Plaintiff and Rachel Cope as joint account holders on the account.  Plaintiff, however, contends Defendant closed Plaintiff's original account and transferred the balance to a new MBNA Platinum MasterCard account.

In June 2002, Plaintiff attempted to remove herself as an account holder on the MasterCard account, but MBNA would not delete Plaintiff because Rachel Cope did not meet the criteria for sole ownership of the account.  In November 2002, Defendant conducted a fraud investigation of the account at Plaintiff's request.  After Defendant discovered monthly statements through at least April 1999 had been mailed to Plaintiff and Rachel Cope

jointly to Plaintiff's address, which was also the family
address, Defendant concluded there was not any fraud.

On January 24, 2003, Defendant received Automated Consumer
Dispute Verification (ACDV) forms pertaining to Plaintiff and the
account at issue from Experian, a credit reporting agency (CRA).
Defendant also received ACDV forms on January 31, 2003, from
Equifax, another CRA, and again on June 2, 2003, from Experian.
Each of the ACDV forms described the customer dispute only as
"consumer states/comments . . . not his/hers.  Provide complete
ID."  In response to the ACDVs, Defendant reviewed the
identification information Plaintiff provided on the ACDV and
verified that Plaintiff's name, Social Security number, and joint
account status matched the information in Defendant's records for
the MasterCard account.

Defendant also reviewed the CIS database comments to
determine whether they contained anything that would indicate
Defendant's information was not accurate.  At the time Defendant
responded to the CRAs, the CIS comments indicated (1) on
October 9, 2001, an express payment had been made on the
MasterCard account with funds from a Washington Mutual joint
checking account belonging to Plaintiff and Rachel Cope;
(2) Plaintiff had not disclaimed ownership of the account until
April 2002, which was seven years after the account had been
opened; and (3) Defendant had conducted an investigation in

4 - OPINION AND ORDER

November 2002 and found there was not any fraud in spite of
Plaintiff's claim that the account did not belong to her.
Defendant informed the CRAs that the address on file for the
account was different from that provided on the ACDVs.  Defendant
also noted addresses of account holders change frequently, and,
therefore, Defendant concluded the other information that matched
was sufficient to verify the account belonged to Plaintiff.

On April 30, 2003, Defendant "charged off" the MasterCard
account.  In accordance with its policies and practices,
Defendant "overlaid" a new account number on the old account
number for credit reporting purposes as part of the charge-off
process.  On May 8, 2003, Trans Union, another CRA, transmitted
an ACDV to Defendant about the new account number and reported
the customer dispute as belonging "to another individual with
same/similar name.  Provide complete ID (incld SSN, DOB,
Generation Code, Etc.)."  In response to this ACDV, Defendant
verified the new account number belonged to Plaintiff and
directed Trans Union and Experian to delete the old, overridden
account number.

On October 1, 2003, Rachel Cope filed for bankruptcy.  On
February 6, 2004, in response to letters from Plaintiff's
counsel, Defendant removed Plaintiff's name from the account and
updated her credit file.  Defendant indicated it did so as a
customer courtesy.

5 - OPINION AND ORDER

On April 12, 2004, Plaintiff filed a Complaint in this Court against Defendant and Experian in which Plaintiff alleged they both violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681a, *et seq.*, and, in addition, Defendant defamed Plaintiff. On April 1, 2005, Plaintiff dismissed her claims against Experian.

On November 18, 2005, Defendant and Plaintiff filed Cross-Motions for Summary Judgment.  On December 13, 2005, Plaintiff filed a Motion to Strike.  The Court heard oral argument on these motions on February 24, 2006.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike paragraph nine, paragraph three, and the third sentence of paragraph four of Denise English's Affidavit.

Plaintiff moves to strike paragraph nine on the ground that English testified at deposition the information in paragraph nine is based on "education memos" that Defendant did not produce in discovery.  According to Defendant, English later advised defense

7 - OPINION AND ORDER

counsel that she was mistaken about the existence of education memos referred to during her deposition.  Yim Decl. ¶ 2.  English clarified she was referring to "desktop procedures," copies of which already had been produced to Plaintiff's counsel.  Yim Decl. ¶ 2.  Defense counsel informed Plaintiff's counsel of English's clarification, and Plaintiff's counsel did not move to compel production of any education memos.  Yim Decl. ¶ 2.

In light of Defendant's explanation that the materials containing information about the procedures at issue were furnished to Plaintiff as desktop procedures and the fact that Plaintiff did not move to compel any "education memos," the Court concludes there is not any basis to exclude the substance of paragraph nine from the record.  The Court, therefore, denies Plaintiff's Motion to Strike as to paragraph nine of English's Affidavit.

As to the remaining aspects of Plaintiff's Motion to Strike, the Court did not find it necessary to consider either paragraph three or the sixth sentence of paragraph four of English's Affidavit in order to resolve the pending Motions.  Accordingly, the Court denies as moot Plaintiff's Motion to Strike these portions of English's Affidavit.


## PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff alleges Defendant is estopped from relitigating

the reasonableness of its investigation procedures based on the holding of the Fourth Circuit in *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426 (4th Cir. 2004).  In addition, Plaintiff contends Defendant (1) negligently or willfully failed to comply with the requirements of § 1681s-2(b) of FCRA and (2) defamed Plaintiff.  Defendant, in turn, contends it is not estopped pursuant to *Johnson*, it fully complied with the requirements of § 1681s-2(b), and FCRA preempts Plaintiff's defamation claim.

## I. FCRA

FCRA imposes civil liability on any person who negligently or willfully fails to comply with the requirements of FCRA. 15 U.S.C. §§ 1681n, 1681o.  FCRA sets forth two general requirements for those who furnish information to CRAs:  the duty to provide accurate information and the duty to investigate the accuracy of information upon receiving notice of a dispute. 15 U.S.C. §§ 1681s-2(a) and (b).

Section 1681s-2(d) provides that § 1681s-2(a) "shall be enforced exclusively under § 1681s of this title by the Federal agencies and officials and the State officials identified in that section."  Plaintiff brings her claims under § 1681s-2(b), which provides:

> After receiving notice [from a CRA] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the

9 - OPINION AND ORDER

disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(I) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

Although the Ninth Circuit has not addressed this issue, district courts in the Ninth Circuit and other circuit courts have held those who furnish information to CRAs must conduct reasonable investigations with respect to disputed information. *See Westra v. Cred. Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). *See also Johnson*, 357 F.3d at 431; *Stiff v. Wilshire Cred. Corp.*, CIV05-00462PCTMEA, 2006 WL 141610 (D. Ariz. Jan. 17, 2006). Even though the question whether "a defendant's investigation is reasonable is a factual question

normally reserved for trial, . . . summary judgment is proper if
the reasonableness of the defendant's procedures is beyond
question." *Westra*, 409 F.3d at 827 (citing *Crabill v. Trans
Union L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)).

**II.  Defendant Is Not Estopped by *Johnson*.**

As noted, Plaintiff alleges Defendant is collaterally
estopped based on the holding in *Johnson* from relitigating
whether it performed a reasonable investigation of Plaintiff's
account.

In *Johnson*, MBNA, the defendant, contended the plaintiff was
a co-applicant and co-obligor on an MBNA credit card account.
The plaintiff argued she was merely an authorized user rather
than a co-obligor and disputed her responsibility for charges on
the account with the three CRAs.  *Johnson*, 357 F.3d at 428-29.
Trans Union and Experian sent the defendant ACDV forms that
specifically indicated the plaintiff disputed she was a co-
obligor on the account.  *Id*.  For example, the ACDV from Trans
Union indicated "WAS NEVER A SIGNER ON ACCOUNT.  WAS AN
AUTHORIZED USER."  *Id*.  In response, the defendant reviewed its
account information, compared it to the information from the
ACDV, and determined it properly was reporting the plaintiff as
an obligor.  The plaintiff then sued the defendant and alleged,
among other things, that the defendant failed to conduct a
reasonable investigation under § 1681s-2(b) of FCRA.  The

district court held a jury trial and denied the defendant's motions for judgment as a matter of law.  *Id*. at 429.  On appeal, the Fourth Circuit observed the CRAs notified the defendant of the specific nature of the plaintiff's dispute; *i.e.*, the plaintiff's assertion that she was not a co-applicant.  The court, therefore, found a jury reasonably could conclude the defendant's investigation, which was limited to confirming that the name and address on the ACDV were the same as in the defendant's records, was unreasonable because the defendant did not verify the accuracy of the information in its records.  *Id*. at 431.

The *Johnson* court, however, did not hold Defendant's standard investigation procedures necessarily were unreasonable as a matter of law in all circumstances nor conclude MBNA's investigation under those circumstances necessarily was unreasonable as a matter of law.  In any event, the facts of this case are different from those in *Johnson* both as to the information provided to Defendant in the ACDV forms and as to the investigation Defendant conducted.

Based on this record, the Court concludes *Johnson* does not have any preclusive effect on Defendant's right to litigate the reasonableness of its investigation in this case under these circumstances.  Accordingly, the Court denies Plaintiff's Motion for Summary Judgment as to the estoppel issue.

## III. Defendants Did Not Violate § 1681s-2(b) of FCRA.

Plaintiff also contends Defendant performed only a cursory investigation of its records when it received the ACDV forms from the CRAs, and, therefore, Defendant's investigation was not reasonable and did not satisfy the requirements of FCRA.

Although neither the Ninth Circuit nor any district court within the Ninth Circuit has defined what constitutes a reasonable investigation under these circumstances, a number of other courts have examined the issue. For example, in *Westra* the plaintiff was the victim of identity theft. The plaintiff received notice that the defendant was attempting to collect from plaintiff an account that did not belong to him. 409 F.3d at 826. The plaintiff mailed a dispute letter, which included a fraud statement and information about the identity theft, to Trans Union to advise that the account did not belong to the plaintiff. *Id*. Trans Union then sent an ACDV to the defendant and requested an investigation of the disputed account, but Trans Union did not make any reference to fraud or identity theft. *Id*. The defendant verified the plaintiff's name, date of birth, and address and determined the account belonged to the plaintiff. *Id*. When the plaintiff reviewed his credit reports and discovered the account was still being reported as belonging to him, the plaintiff sent a second dispute letter to Trans Union and also sent a letter directly to the defendant. *Id*. Trans

13 - OPINION AND ORDER

Union contacted the defendant about the account a second time and
indicated the dispute involved fraud and identity theft.  *Id.*
Based on the new information, the defendant deleted the
fraudulent account from the plaintiff's credit report.  *Id.*  The
plaintiff brought an action against the defendant alleging
violation of of § 1681s-2(b) of FCRA.  The Fourth Circuit granted
summary judgment for the defendant and reasoned

> [the defendant's] investigation in this case was
> reasonable given the scant information it received
> regarding the nature of [the plaintiff's] dispute.
> [The defendant] received a CDV from Trans Union
> indicating that [the plaintiff] was disputing the
> charge on the basis that the account did not
> belong to him.

*Id.* at 827.  The court held the defendant's investigation was
reasonable as a matter of law.  *Id.*

     In *Malm v. Household Bank (SB), N.A.*, the plaintiff's wife
signed the plaintiff's name on a joint credit-card application
without the plaintiff's consent or knowledge.  Civ. 03-
4340ADMAJB, 2004 WL 1559370, at *1 (D. Minn. July 7, 2004).  The
billing statements were addressed only to the plaintiff's wife.
*Id.*  The plaintiff and his wife divorced, the plaintiff's ex-wife
failed to make payments on the joint card, and the plaintiff
discovered the delinquency on his credit report.  *Id.*  At that
point, the plaintiff and his ex-wife informed the defendant that
the plaintiff should not be listed on the account.  The
defendant, however, advised them it could not remove the

plaintiff from the account until the balance was paid in full.
*Id*.  The plaintiff's ex-wife then filed for bankruptcy, and
credit agencies began contacting the plaintiff about the joint
account.  *Id*.  The plaintiff disputed his responsibility for the
account with the defendant, with the collection agency that
defendant turned the matter over to, and finally with Trans Union
and other CRAs.  *Id.,* at *1-2.  In response to the plaintiff's
dispute, Trans Union sent the defendant an ACDV form in which
Trans Union noted "Not his/hers.  Provide complete ID."  *Id*., at
*2.  The defendant compared the information on the ACDV with its
records and confirmed the information matched.  *Id*.  The
plaintiff then brought an action against the defendant for
violation of § 1681s-2(b) of FCRA alleging the defendant did not
perform a reasonable investigation.  The court granted summary
judgment in favor of the defendant.  *Id*., at *5.  The court based
its ruling on the fact that the ACDV form sent to the defendant
by Trans Union did not identify the basis of the plaintiff's
dispute; did not inform the defendant that the plaintiff believed
his ex-wife forged his signature; and did not reflect the
plaintiff, therefore, believed the account belonged only to his
ex-wife.  *Id*.  The court held the defendant's investigation was
reasonable as a matter of law "given the cursory notice [the
defendant] received [from the plaintiff] concerning [p]laintiff's
dispute."  *Id*.  The court also rejected the plaintiff's argument

15 - OPINION AND ORDER

that the defendant should have done a more thorough review based
on the plaintiff's report to the defendant because "§ 1681s-2(b)
does not require furnishers to investigate disputes until they
receive notice from a consumer reporting agency." *Id*., at *4
(citing 15 U.S.C. §§ 1681i(a)(2)(A), 1681s-2(b)(1)).

During oral argument, Plaintiff's counsel conceded Plaintiff
was the co-obligor on the MBNA Visa account opened in 1994.
Plaintiff contends, however, MBNA closed the Visa account and
transferred the balance to an MBNA Platinum MasterCard in April
2000 and Plaintiff did not agree to be a joint account holder on
the new account.  As noted, Defendant asserts the account was not
closed but merely upgraded.  According to Defendant, therefore,
Plaintiff continued to be a joint cardholder on the upgraded
account under the terms of the original account agreement and
under the terms of the upgrade.

Plaintiff's counsel also stated during oral argument that
Plaintiff was not bringing a claim for fraud related to the MBNA
MasterCard.  Instead Plaintiff brings her claims based on the
argument that the history of the alleged closure and transfer of
the original account required MBNA to conduct a more thorough
investigation than it did.  Plaintiff relies on the court's
analysis in *Johnson* to support her contention that Defendant did
not conduct a reasonable investigation.

This Court finds unpersuasive Plaintiff's assertion that

16 - OPINION AND ORDER

MBNA closed and transferred the account and, as a result, that Plaintiff was no longer responsible as a joint account holder. The language of the offer Rachel Cope received and accepted with respect to the original MBNA Visa provided:

> Right now, you can choose to upgrade your existing . . . credit card to a . . . Platinum Plus credit card! . . . *The terms and conditions of your replacement Platinum Plus credit card will be the same as those conditions in your current Credit Card Agreement.* . . . Although you will receive a new account number, all your account history, your PIN, and activity [including outstanding balances] will automatically transfer to your replacement Platinum Plus account.

(Emphasis added.)

In addition, the original MBNA Visa agreement provided in pertinent part:

> All persons who initially or subsequently request, accept or use the account are individually and together responsible for any outstanding balance. If two or more persons are responsible to pay any outstanding balance, *we [MBNA] may refuse to release any of them from liability until all of the unexpired cards outstanding under the account have been returned to us and the balance paid in full.*

(Emphasis added.)  Thus, Plaintiff was not relieved explicitly of her co-obligor status with the replacement of the MBNA Visa by the MBNA Platinum MasterCard regardless whether the MasterCard was an "upgrade" or a "new account."

As noted, in *Johnson*, the defendant received more detailed ACDV forms that specifically reflected the plaintiff's contention that she was an authorized user of the card rather than a co-

17 - OPINION AND ORDER

obligor.  In addition, the defendant in *Johnson* performed a more
cursory investigation than Defendant in this case.

The circumstances more closely resemble those in *Westra* and
*Malm*.  For example, in *Malm*, the plaintiff's ex-wife forged his
signature on a credit card application.  It was undisputed that
the plaintiff did not apply for or use the credit card in any
capacity.  Nevertheless, the court held the defendant's
investigation was reasonable as a matter of law due to the
cursory nature of the information on the ACDV form provided to
the defendant.  The court based its ruling on the fact that the
ACDV form did not identify the basis of the plaintiff's dispute,
did not inform the defendant that the plaintiff believed his
ex-wife forged his signature, and did not reflect the plaintiff
believed the account belonged only to his ex-wife.

In addition, the ACDV forms sent to Defendant by the various
CRAs in this case reported the issue only as "consumer
states/comments . . . <u>not his/hers</u>.  Provide complete ID."
Defendant, like the defendants in *Westra* and *Malm*, matched the
information that Plaintiff provided in the ACDV with Defendant's
records.  In addition, Defendant also examined CIS comments for
any information indicating Plaintiff had not opened the account
jointly with Rachel Cope and discovered several facts that caused
Defendant to conclude the account was jointly owned by Plaintiff
and Rachel Cope.

Based on this record, the Court concludes there was not anything in the upgrade and transfer to indicate to MBNA that Plaintiff was no longer a co-obligor or that MBNA needed to conduct an investigation beyond the one it performed, particularly in light of the cursory information in the ACDV forms.  The Court also concludes it is "beyond question" that Defendant conducted a reasonable investigation as required under § 1681s-2(b) of FCRA.

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment as to this claim.

**IV.   Plaintiff's Defamation Claim**

Plaintiff alleges Defendant willfully, deliberately, intentionally, and/or recklessly defamed her when it informed Experian and other CRAs that Plaintiff was responsible for the account because Defendant did not have any reasonable basis to believe Plaintiff was responsible for the account.

Defendant contends Plaintiff's defamation claim is preempted by § 1681t(b)(1)(F) of FCRA.  Plaintiff, however, argues preemption is governed by § 1681h(e), and that section does not preempt her claim for defamation.

Section 1681t(b)(1)(F) of FCRA provides:

> (b) General exceptions.  No requirement or prohibition may be imposed under the laws of any State-

> (1) with respect to any subject matter
> regulated under -
>
> (F) section 623 [15 U.S.C. § 1681s-2],
> relating to the responsibilities of persons who
> furnish information to consumer reporting
> agencies.

§ 1681h(e) provides in pertinent part:

> [N]o consumer may bring any action or proceeding
> in the nature of defamation, invasion of privacy,
> or negligence with respect to the reporting of
> information against . . . any person who furnishes
> information to a consumer reporting agency . . .
> based on information disclosed by a user of a
> consumer report to or for a consumer against whom
> the use has taken adverse action . . . except as
> to false information furnished with malice or
> willful intent to injure such consumer.

Neither the Ninth Circuit nor any other circuit court has

addressed the scope of preemption under FCRA.  A number of

district courts within the Ninth Circuit have addressed the issue

of preemption, however, and reached different conclusions.

*Compare Davis v. Maryland Bank, N.A.*, No. 00-04191, 2002 WL

32713429 (N.D. Cal. June 19, 2002)(the plaintiff's claim for

defamation was preempted by FCRA under § 1681t(b)(1)(F) and

"§ 1681h(e) applies only to conduct which is not governed by

§ 1681s-2(1)(a)-(b)."), and *Roybal v. Equifax*, No. CIV S 05-

1207MCEKLM, 2005 WL 3536115 (E.D. Cal. Oct. 19, 2005)(same), *with*

*Cisneros v. Trans Union, LLC*, 293 F. Supp. 2d 1167 (D. Haw. 2003)

(preemption of the plaintiff's defamation claim was governed by

§ 1681h(e) rather than by § 1681t(b)(1)(F) because § 1681h(e) is

more specific, and a "specific statute will not be controlled or

20 - OPINION AND ORDER

nullified by [the] general one, regardless of the priority of enactment."), and *Gorman v. Wolpoff & Abramson, LLP*, 370 F. Supp. 2d 1005 (N.D. Cal. 2005)(same).

This Court finds persuasive the reasoning of the *Davis* and *Roybal* courts.  Indeed, the plain language of § 1681t(b)(1)(F) precludes Plaintiff's defamation claim because that claim would constitute a "prohibition . . . imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to the [CRAs]."  Plaintiff appears to concede this point and does not address the preemption provision of § 1681t(b)(1)(F) in her Response to Defendant's Motion for Summary Judgment.

Even under § 1681h(e), however, Plaintiff's defamation claim would be barred.  Plaintiff's claim is premised on allegations that Defendant willfully or recklessly provided incorrect information to the CRAs.  Such allegations rely on conduct that falls within § 1681s-2(a), which is enforceable only by federal and state officials.  Thus, the Court finds either statute would preclude Plaintiff's defamation claim.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to this claim.


**<u>CONCLUSION</u>**

For these reasons, the Court **DENIES** Plaintiff's Motion to

Strike (#62)**, DENIES** Plaintiff's Motion for Summary Judgment

(#41), **GRANTS** Defendant MBNA America Bank's Motion for Summary

Judgment (#37), and **DISMISSES** this matter.

     IT IS SO ORDERED.

     DATED this 8th day of March, 2006.

                             /s/ Anna J. Brown

                             _____

                             ANNA J. BROWN
                             United States District Judge